Case number 23-11721 et al. Starbucks Corporation doing business as Starbucks Coffee Company Petitioner v. National Labor Relations Board. Mr. Baskin for the petitioner, Mr. Loro for the respondent, Mr. Blitzen for the intervener. Morning counsel, please proceed when you're ready. Good morning. Maurice Baskin on behalf of Starbucks Corporation, best to reserve two minutes for rebuttal. The issue in this case is whether a store manager violated the act by telling a partner, employee, partner as they call them, that they should not hand out pins to customers during work time. The context of this instruction, which the board failed to address, was that the manager was reacting to specific incidents that occurred in the sales area during working time. No reasonable employee who have understood the instruction any differently from partner Ibarra, whose understanding is quoted and agreed to by the administrative law judge. The understanding was the manager was saying they, I quote, they could not hand out buttons to customers while on paid time. End of quote. A perfectly lawful policy. But the board majority, ignoring the context, finding that an employee would have reasonably understood the manager's prohibition somehow to extend beyond the selling floor to non-public areas. The record shows that no one understood the instruction that way. If you go back to, I've already said what Ibarra thought, but look at the at the union's unfair labor practice charge. They're representing the economically dependent employees that the board is What was the charge? That the manager reprimanded an employee for handing a union button to a customer and telling the worker not to hand out union buttons to customers in the future. I'm going to go on to the general counsel, but looks like you had a question. I think the record is strongly supports you with one possible exception, which I want to ask you about, which is the last nugget of Marsicles testimony. And she's saying that this is the second incident in question. Um, uh, she confronts Ibarra about it. Ibarra says, um, I was on a 10 minute break. And Marsicles response is that's still considered company paid time. It sounds like that's about the distinction between paid work time and paid breaks. And if, uh, if a reasonable understanding that exchange is you can't solicit on paid breaks, that's overbroad. But it's not. If you consider the context of directing it to customers in the sales area, there's no exception for break time for that break time rule. General solicitation does not apply to, uh, organizers in a sales area talking to customers. That's true. That's right. If, uh, if that's what was going on and Ibarra had objected and said, I'm on my break, the response should have been not. Well, break time is no different from paid time. The response should have been. Yeah, but you were on the sales. And so recognize the ambiguity that you're referring to. It's still saved by the fact that, first of all, the board gave no consideration to the to the context and the background, and neither did the administrative logic other than acknowledging the fact of what Ibarra thought he was saying to her, which was don't hand out pins to customers in the sales area. Uh, it's regardless. And that is regardless of the paid time. There was a follow up question. And so I recognize the ambiguity you're describing. But in the context and the failed, the real question is, what did the employee? In fact, that's the question that the way the board put it, what the employee would have reasonably understood the prohibition to be. And actually, they say that in the context of extending even further to say the back room somehow is off limits when that was nothing to do with the incident at hand and was never mentioned. But I think what I don't understand about this argument is the facts had to do with giving buttons to customers that I get. So whenever you're talking about, you know, you can't give buttons to customers. That's the narrow way to think about it. And then the following question is why? And if the answer to why is because you can't give buttons to anybody on work premises during work time. That's why this particular incident happened to be about customers. But the reason you can't do it is we just don't do that on work premises during work time, including break time. If that's the answer, then the context is not what you say it is. The context is defined by the ultimate instruction. And the ultimate instruction is, and I'm just quoting, this is something they shouldn't be doing while they're, you know, on the clock, that they can't do that, that they can do that outside the store, you know, on their free time. That isn't what you're saying. If the only time you can do it is outside the store on free time, that doesn't mean the only prohibition is on doing it, is on distributing it to customers. Well, we would submit that with the background, with the knowledge that this was an incident in which it was to customers in the sales area, it was perfectly correct for him to say outside. Wouldn't even have occurred for her to say in a back area because customers don't go into back areas and it was not mentioned. So to say it seems consistent to me, I'm sorry, that if you're dealing with a customer sales area question, that for the manager to say, if you want to do that, wait till you go outside, because that's where the incident occurred. That's what, right. That's what depends on what the that is. If the that is that, when can I ever give a button to a customer? That's one way. The other way to frame the question is, when can I ever give the button to anybody? How do you know? You don't know which one is being answered. Well, but the general said the incident actually involved the giving of a button to a customer. That doesn't mean the question that I'm telling you is, these are the particular times that you can engage with customers. But the general counsel in the during the trial objected to any discussion of giving buttons to anyone but customers. There was a colloquy and we described in our brief and someone asked the question about the coworker and the general counsel objected and the ALJ interjected. Yeah, I see. And we described that in our in our briefs. So they have waived or given up that argue when customers comes into play, you know, just the use of that term as opposed to giving it to anybody, right? It was not. The case was never about giving it to anybody but customers or presumed customers because Mariscal believe in both incidents involved customers. And uh, Ibarra understood the instruction that way. So I would agree with you if there had been any incident involving to the company, the company's knowledge, the management's knowledge of coworker solicitation, there's a different set of rules. Is there any, um, is there any doctrine on the extent to which in a, in an agency proceeding before the board, the proof can vary from the fact for you is the charge is very specific. It says to a customer, right? And it doesn't seem, it doesn't seem obviously improper to me that that's the charge and they hold the hearing and it comes out at the hearing. Hypothetically, it comes out that a statement was made. Um, broad version of statement on the L. G. L. J. Says, well, proof proof varies a little bit from the charge, but I'm going to find an unfair labor practice based on a statement. Correct. Two answers to that. There is a doctrine of the board uses called Pergament case, which is cited in the board's brief two part tests for whether it's a violation of due process. And we are not really contending that they failed that test. We did not address that. But we do note that it was a bait and switch. It was unfair because of what I just described during the trial. But one of the parts of the test has to be fully litigated going beyond the allegations of the complaint as they clearly did. And they shut down full litigation with this exchange saying you're not allowed to talk about coordinators. That's the issue. I take real purpose in emphasizing what the complaint said and what charge said and what he Boris is that if that it shows that no reasonable employee could have come to the conclusion that they're saying now the general counsel is representing. They presumably have talked to it. Borrowed the star witness. The union presumably is aware of what the allegations were. And how do they frame the case that it's a case about, uh, the customer being told not to hand out to customers. Nothing more. Not even a statement of boilerplate statement and other similar activities. No, this is what they both said. And so it's regardless of due process concerns. Our real point about that is it totally undermines and undercuts the board's claim after the fact that a reason this is how a reasonable employee would have understood it was to talk about back rooms and back break times and the like when that is not the way they themselves, the general counsel or the union or the employees understood. And that that's really the critical part of the case. Andi, you know, it's all consistent with the cases that we cited the Omni case and the Dover Energy case of this court, which is really directly on point. It says, you know, you look at the events leading to his statement. They are relevant in considering how a reasonable employee would understand the statement. The board gave no consideration to that in their one liner of an opinion. And the administrative law judge actually gave deliberately did not address the retail sales defense. He's the judge said, Well, you know, I rec there are no special circumstances brought forth by the company and then puts a footnote says so we don't need to reach the special circumstance, which is that it's a retail sales operation, and therefore it's perfectly permissible to have this sort of requirement and to give this sort of instruction. Just notice my time, but I don't have additional questions for you minutes. We'll give you a little time for rebuttal. Okay, thank you. Mr Lara. Good morning, Your Honors. May it please the court here for the National Labor Relations Board, asking this court fully enforce the board's order because it is supported by substantial evidence and settled law. And I want to start by saying there are a few things that aren't in dispute here. My opponent's argument is that because there are retail enterprise, they could extend such a ban on the selling floor where customers are Did she state a broader ban that employees would reasonably view is going beyond the selling floor to non public areas like the back room and other areas of the store, even in non working time? Because, as was noted this morning, Mariscal said this covers even paid breaks. And I think it's important to go right to the source. Mariscal statements herself because they're about Mariscal statements, not just what a bar of the employee did or where her feet were standing at the time. And you touched on these statements this morning. Mariscal told the bar. You can't do that. Can you tell us where you're where you're looking? Oh, yes, Your Honor. And I will give a site for each of these critical statements and their statements. You noted this morning. Mariscal told the bar. You can't do that on Starbucks property while on the clock. And then she added, you know, this is at page 3 67. This is at page 67 to 68 of the appendix, as well as page 96 to 97 and 99. I apologize that there are multiple pages, but there are multiple statements showing this broadband. So it's kind of three strikes here. First, it's you can't do that. Well, on Starbucks property and on the clock, there's immediately no limit as to what location she's talking about. Then she says, But you can do that outside of company property doing your time off. Which page is that? Can you just tell us the specific page for specific books? That's helpful. Yes, Your Honor. I believe that next one is at 96 to 97. But if you if you compare, I appreciate your question. We can nail that down. And I'm just saying that's the second time she's made a broad statement that's not limited as to location. And just I will go through them again with the site you need. When you look at page 67 of the record, and this is where a bar is asked, Did she make a specific comment? She says, Yes, the specific comment I mentioned is that I can't do this well at work on Starbucks property again. All of this stuff about she understood it is just being to customers or particular locations. She said, No, this is it. A 67. The specific comment was I could not be distributing buttons on Starbucks property. And then the next one, we can get this right. This is where, you know, first call was asked. How would you characterize the conversation? And I think that's key. This is Mariscal characterizing her own instruction said I let them know that this is not something they should be doing while they're on the clock. They can do it while they're outside the store again. This is a 96 or page 246 of the transcript. And then she said, No, on their free time. And so we on top of that have the next thing where the employee says, But I was on break the time we're just talking about. She said, Well, that's still on the clock. That's still paid company time. And so that's substantial evidence to support finding that a reasonable employee prevented, you know, presented with that broad dictate from their supervisor would feel. Where can I do this? Only off Starbucks property on my free time, meaning not even paid breaks. That last statement. Yes, Marcicle is helpful to you. I've said that already. But, um, if you look at the take a step back and look at the entirety of what's going on here, I mean, it seems a little rich to be parsing Marcicles testimony as if it were a statute when the board itself in its own charging document says this is about statements to customers. Well, and you borrow when asked about that specific point says, Yeah, it was a statement about customers. And the fact the undisputed facts of the case are this prompts the exchanges ending up buttons to customers. A couple things answer your question first. Whatever precipitated Mariscal's comments when she actually spoke, she went much broader. As we just discussed, this isn't undisputed. She said you can't do that on Starbucks property. You can do it. A boss. Starbucks property. Bottom 96 is where you're reading from, which just raises the question of what is that? Right. And the that if you go back to her direct testimony is you can't hand out buttons to customers. If that's what the case is about, the later statement shouldn't be doing that on the clock is perfectly fine if that's what she said. But I don't think I'm parsing her statements like a statute. I think I'm quoting where she was asked. Think you've said a lot of things, Miss Mariscal. How do you characterize your own statement? And she immediately said, I characterize it is this broader ban that the board found. And a bar was asked specifically, what did you hear? What was said? She heard the broader rule. And that happened again and again. And this is all in what we've quoted. So the question becomes sense of Mariscal went far beyond in her statements than what she had observed those incidents. Why would a reasonable employee in a bar's position at risk of discipline disregard her supervisor's much broader statement under the assumption that it was implicitly about. This narrower context, I mean, if she understood that it was about the narrower context, then that's not regarding it because she'd be adhering it. Yes, it all turns on whether you think the broad. I think it's it's hard to dispute that the broader statements taken just at face value could cover more than custom. And the question is whether the context tells you that actually even those broader statements are articulated a level of generality. They have to be talking about only customers because that's what the case was about. That's what the charge was about. That seems like that's it. If I may, Your Honor, I know my time is up first on the charge. I think that was well discussed already. That initiates the case and set theory. But the parties together fully litigated the evidence of the broader statements. It was fully litigated. There was no surprise or switcheroo to the point where Starbucks Council cross examined and ask questions about those broad statements to, um, as to the context again, a reasonable employee just knows how broad the directive is. And I think I know what you're referring to by context. But my opponent has a couple problems when they actually say that Mariscal explicitly limited it to customers, as if she actually said to employees to customers. One is that wasn't presented to the board. It's not a technical argument. It's a difference between what was argued before the board, which was interpretation of undisputed statements. And you can see that in their brief to the board, which we included. And then now, for the first time, it's disputed statements. Also, the context that they're referring to in the judge's decision isn't helpful to them. That's where the judge, according to his own headings, is saying, Here's my recitation of the what was said. When he makes findings of what was said, he finds the broader statement, and rightly so, based on the substantial evidence in terms of Mariscal and Ibarra's testimony that we've discussed. Ibarra did not testify, as they suggest. I understood this directive as only going to customers, and the judge did not find she did. It just stands to reason that if you're given this broad directive, you can do that off Starbucks property and on your free time. That would include doing it to customers. But she didn't say she only understood it that way. In fact, I think it's fair to say, and it's important to note, the issue is substantial evidence. Even if this testimony could reasonably be read two ways, the board picked a reasonable way. And I wanna say, not only is this about Mariscal's statements, it's not about the company policy. The board addressed it and said she didn't even refer to it. And we'll explain this in our brief, and I won't belabor it absent questions. But even if employees would somehow view Mariscal's statements in light of a policy she didn't refer to, put together, they wouldn't equate to a lawful rule. Because, yes, the rule says working time and doesn't define it in this part. Mariscal sure did. She said that included breaks. And I think the policy viewed in that way would be broader than my opponent indicates. Thank you, counsel. Thank you, Mayor Beaner's counsel now. Thank you. May it please the court. Over the last several years, we've had an extraordinary labor development. Over 9500 workers employed by Starbucks have unionized 385 separate Starbucks stores. And that didn't happen by magic, and it didn't happen by luck. It happened because these workers are able to talk to each other about the terms and conditions of their employment and their desire to have a union. And they're not allowed to talk about it on the selling floor, but they talk to each other in the break rooms. So fundamentally, if a worker is told you can't talk about union, which is what solicitation and distribution means. If you can't talk about it at all during work time, and we define work time is including your breaks. That is an effort by Starbucks to shut down this key component of labor organizing. And we have focused excessively, even today, I think, on what Ms. Mariskell testified and have not focused on the substantial evidence, which is based purely sufficiently on what Ms. Ibarra testified on. JA43, Ibarra says, line 12, she, meaning Mariskell, called me to the back when she came in and had a conversation with me telling me that I was not allowed to give out union pins. I was not allowed to give out pins. And on JA67, Ibarra again testifies when the judge asks her, asks them, what did she what did she say about Starbucks property? Ibarra says that I could not be distributing buttons while at work at Starbucks property. An effort is made wholly unpersuasively with respect. Judge Katz has zeroed in on this, where on cross-examination, Ms. Sade says to Ibarra, you understand she was telling you that you couldn't hand out buttons to a customer while on work time? And Ibarra, recognizing that that is a subset, that is certainly part of what Ibarra understood they were being told, Ibarra says, correct. But immediately thereafter, Judge Giannopoulos asks the follow-up questions to Ibarra, says, what did you understand Mariskell to be saying? And Ibarra returns to her, to their larger statement. This is a JA68. I understood it, that I could not distribute items while at work on the clock. Substantial evidence. We look only at what Ibarra said and ask whether the board could legitimately conclude based on what Ibarra said, that what Ibarra, presumptively a reasonable employee, heard was you can't distribute it while anywhere on Starbucks premises on the clock. And of course, and this is the second point Judge Katz has made, it is powerfully significant that when Ibarra protests, actually just tries to the store manager should have said, oh, yeah, no, I understand we're on break, but even when on break, you can't do it in a selling area. And that is exactly not what the store manager says. Instead, this is JA99, when I mentioned it to Rachel, this is Pam Mariskell testifying, they made the comment that they were in on a 10 minute break. And I said, that is still considered a company paid time. So it is not something you should be doing while on the clock. That is the time that the store manager needed to clarify if the rule was you just can't do it in selling areas. And instead, the store manager said something very different. In fact, and this is received inadequate attention, if I may, the board had an independent basis for finding the violation. And that statement alone, which was, even when you're on break, the company still owns you, you are on work time, you can't distribute, you can't solicit. Just the statement by Starbucks, even when you are on a paid break, you're working for us, is so outrageous and so broad, that it impinges not just solicitation and distribution, but all section seven protected activity. Three board members agreed with that. They referenced Kaplan and the others agreeing with Kaplan. I don't believe that Starbucks has engaged with that finding at all. It's clearly supported by substantial evidence. And on that basis, we ask that you fully affirm the board's decision below. Thank you, counsel. Thank you. Let's ask him. I'll give you two minutes for rebuttal. Thank you. Okay, I just want to point out response to the union. First, there's a reason why we haven't spent much time talking about what a barra understood the comment to mean other than us setting it at the start. And that's because the administrative law judge made a finding of fact. And the finding was that a barra understood Mariscal was saying they could not hand out buttons to customers while on paid time while at work on the clock. That is the finding. And now the union and the board, they seem to be wanting to run away from that. But that was the understanding of the notion that, uh, that we haven't engaged with member Kaplan's, uh, this partial dissent is that it's we we appreciate the part that he agreed, but the rest of it, it still fails because of the failure of analysis by the board. You can't uphold a decision in which the board has not followed your specific instructions and their own in their precedence in how they analyze the case. The board gave no consideration to the circumstances, and we maintain, and I and I repeat again that you have to accept that the, uh, supervisor, the manager was referring at all times to the incident before her, which was, uh, giving pins to your customers in the sales area. And it's no more, no less. And that's why everything that was stated around that at most ambiguous, but ultimately saved by the fact that that's what she was confronting. And that's what your own decisions have held. That's what you have to look at. Uh, and that's what we've argued. And I would just lastly challenge the board attorney saying that we didn't present the issues to that these issues to the board. I submit that at ages 3 56 3 58 of the joint appendix, those sections of the brief and supportive exceptions go through chapter and verse. They talked. We talked about the context, the background circumstances of the selling area case law that the administrative law judge and the board failed to address. And it just puts an entirely different light on the case. If you think about it as a customer incident, no more, no less. So we ask that you do that and deny enforcement to the board's order. Thank you. Thank you, counsel. Thank you to all counsel will take this case under submission.
judges: Srinivasan, Katsas, Childs